# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| **LYNN KRUIS**, | ) |
| Plaintiff, | ) |
| | ) Case No. 12-cv-5675 |
| vs. | ) |
| | ) Judge Manish S. Shah |
| **TARGET CORPORATION**, a foreign corporation, *et al.*, | ) |
| | ) Magistrate Judge Susan E. Cox |
| Defendants. | ) |

## TARGET'S REPLY TO HUSSMANN CORPORATION'S RESPONSE TO TARGET'S MOTION FOR PARTIAL SUMMARY JUDGMENT

NOW COMES Defendant/Cross-Plaintiff, **TARGET CORPORATION** (hereinafter, "Target"), by and through one of its attorneys, Robert M. Burke of Johnson & Bell, Ltd., and for its reply to the response of Hussmann Corporation (hereinafter, "Hussmann") in opposition to Target's motion for partial summary judgment, states the following:

### I. Introduction

Hussmann entered into a contract with Target wherein it agreed to insure, defend, and indemnify Target for, *inter alia*, any claims or lawsuits arising from the subject matter of the contract. The subject matter of the contract was the sale of refrigeration and freezer cases to be used in Target's retail stores. This lawsuit and claim involve the alleged failure of a freezer case which leaked water onto the sales floor of the Melrose Park Target store causing Plaintiff to slip and fall and sustain injuries. Target has tendered its defense to Hussmann and its insurers; however, they have refused to comply with their contractual obligations to defend and indemnify Target. Target has incurred damages in fees and costs associated with its defense of this case. Target is, therefore, entitled to summary judgment as to Counts VI (indemnity) and VII (breach of contract) of its Crossclaim.

## II. Legal Argument

**A. The most recent, controlling authority espoused by the Eighth Circuit Court of Appeals mandates that this Court reject Hussmann's arguments, which are based on non-precedential decisions premised on an analysis specifically rejected by the Eighth Circuit, and enforce the clear and unambiguous indemnity agreement as written.**

Hussmann completely ignores the most recent pronouncement of Minnesota law by the Eighth Circuit Court of Appeals regarding indemnity agreements, *Harleysville Ins. Co. v. Physical Distrib. Servs.*, 716 F.3d. 451 (8th Cir. 2013)[1], and relies predominantly on a non-precedential, unreported, District Court opinion to support its contention that the indemnity provision at issue here is unenforceable. It is well settled that unreported decisions are not precedential authority. *United States SEC v. All Know Holdings, Ltd.*, 949 F. Supp. 2d 814 (N.D. Ill. 2013); *Chemetron Corp. v. Jones*, 72 F.3d 341 (3rd Cir. 1995). To further bolster its argument, Hussmann cites an unpublished Minnesota appellate court decision which, by Minnesota statute, also is not precedential. (See Minn. Stat. § 480A.08.) Both courts employed an analysis that has been specifically rejected by the Eighth Circuit, sitting in Minnesota and applying Minnesota law. Hussmann's plea that this Court follow those non-precedential, unreported decisions, in the face of contrary, binding authority, is incompatible with the obligation of District Courts to adhere to the decisions of superior courts.

In the unreported, non-precedential case of *Brown v. Target Corp.*, the District Court relied on the following footnote from *Yang v. Voyagaire Houseboats, Inc.*, 701 N.W.2d 783 (Minn. 2005):

> Strictly construed, the indemnification clauses do not contain language that (1) specifically refers to negligence, (2) expressly states that the renter will indemnify Voyagaire for Voyagaire's negligence, or (3) clearly indicates that the renter will indemnify Voyagaire for negligence occurring before the renter took possession of the houseboat.

2013 U.S. Dist. LEXIS 151771, *8 (N.D. Ill. Oct. 22, 2013). Based on this footnote, the Court, finding that the language in the contract at issue was "very similar to the language the Supreme

---

[1] *Harleysville* has been cited approvingly five times since its publication and has not been criticized or overturned.

Court of Minnesota rejected in *Yang*" and because "nothing in the clause mentions negligence or that [third-party defendant] must indemnify Target for Target's own negligence," held that the contract did not clearly and unequivocally require that party to defend and/or indemnify Target for Target's own alleged negligence. *Id.* at 9.

The Eighth Circuit, in an opinion district courts are required to follow, has rejected the same analysis employed in *Brown*. It explicitly rejected the notion that the footnote in *Yang* could be construed to require specific language stating that an indemnitor would indemnify an indemnitee for the latter's own negligence before an indemnity agreement could be found to be enforceable. Noting that *Yang* was decided on public policy grounds, the Eighth Circuit rejected the proposition that the footnote somehow required a specific statement that the indemnitor agrees to indemnify the indemnitee for its own negligence. Instead, the Court held that normal rules of contractual construction applied:

> Harleysville argues <u>Yang</u> renders the indemnification provision in this case unenforceable under Minnesota law. **Harleysville's reliance on <u>Yang</u> is misplaced**. The Minnesota Supreme Court decided *Yang* on the public policy ground that a guest is never liable for an innkeeper's negligence. The inferences Harleysville draws from a footnote in *Yang* are mistaken. Properly read in context, the footnote simply reaffirmed settled Minnesota law that an indemnification agreement must be "clear and unequivocal." In stark contrast to PDSI, the indemnitor in *Yang* was an individual who signed a rental agreement he professedly "did not understand." The corporate indemnitee in *Yang* sought to hold the individual indemnitor liable for the corporate indemnitee's *prior* negligence. The *Yang* provision was insufficient to "fairly apprise[ ]" the individual indemnitor of potential liability for negligence by the corporation occurring before the agreement was signed. By contrast, the parties in this case are sophisticated businesses who fully understood the terms of the agreement, and the indemnification provision gave PDSI clear notice of an obligation to indemnify Miller for future personal injury claims arising from Miller's negligence.

*Harleysville*, 716 F.3d at 457-58 (emphasis added; internal citations omitted). Thus, it was the defendant's status as an innkeeper, not any insufficiency with the indemnity agreement, and the difference in the sophistication of the parties, not the failure of the contract to be sufficiently clear,

3

that prompted the Minnesota Supreme Court to decline to enforce the indemnity agreement at issue in *Yang*.

As the Eighth Circuit plainly held, under Minnesota law, notice is the main consideration in determining whether an indemnity agreement shall be enforced. *Id.* at 457. The indemnification language must fairly apprise the indemnitor of its obligation to the indemnitee. *Id.* Where the parties are sophisticated businesses who are able to fully understand the terms of the agreement, and the agreement gives the indemnitor clear notice of its obligation to indemnify, the agreement will be enforced. *Id.* at 458. "Magic words" stating that the indemnitor will indemnify the indemnitee for its own negligence are not required. Unequivocal terms will be enforced as written. *Id.* at 463. The term "any" means just that, and the Court will not "manufacture ambiguity where none exists." *Id.* at 458.

The indemnity agreement the Eighth Circuit found to be enforceable read:

> [PDSI] hereby indemnifies and saves MILLER harmless from any and all claims, actions, or causes of action in any way *relating to* personnel assigned to MILLER, including, but not limited to, personal injury, workers compensation, third party claims …

*Id.* at 455-56 (emphasis added). The indemnity agreement between Target and Hussmann was part of a Supplier Qualification Agreement, which provided, in relevant part:

> [Hussmann] shall defend, indemnify and hold harmless Target … from and against **any** liabilities, losses, claims, suits, damages, costs and expenses (including without limitation reasonable attorneys' fees and expenses) … *arising out of or otherwise relating to the subject matter of this Agreement* …

(Target SOF [Dkt. No. 252] 20-21 (emphasis added).) Neither indemnity agreement contains any reference to "negligence" or an obligation to indemnify the indemnitor for its own negligence. The Eighth Circuit squarely rejected the argument, espoused here by Hussmann, that such language is a prerequisite to the enforceability of an indemnity provision, and no superior court decision has been rendered to justify ignoring this application of Minnesota law by the Eighth Circuit.

4

Simply put, the word "any" means *any*. *Id.* at 458. The indemnity agreement between Target and Hussmann applies to *any* claims, suits, etc. It cannot be contended that the claims against Target in this suit do not fall within the broad penumbra of "liabilities, losses, claims, suits, damages, costs and expenses" which trigger Hussmann's duty to indemnify Target. Similarly, the Eighth Circuit held that the phrase "arising out of" is the equivalent of "but for" causation. *Id.* at 459, *citing Faber v. Roelofs*, 250 N.W.2d 817 (Minn. 1977). In other words, there would be no claim but for the subject matter of the agreement—the sale of the freezer case to Target, which leaked and allegedly caused Plaintiff's accident. This triggered Hussmann's duty to indemnify Target and all conditions to apply the indemnity obligation between these sophisticated businesses have been satisfied.

While it is clear that this Court is not bound to follow an unreported District Court decision, it is equally clear that this Court is bound to follow a U.S. Circuit Court of Appeals decision, especially when that Court sits in Minnesota and applied Minnesota law in an opinion involving the issue of indemnification. "In a hierarchical system, decisions of a superior court are authoritative on inferior courts. Just as the court of appeals must follow decisions of the Supreme Court whether or not we agree with them, so district court judges must follow the decisions of this court whether or not they agree." *Reiser v. Residential Funding Corp.*, 380 F.3d 1027, 1029 (7th Cir. 2004 (internal citations omitted)). Conclusive deference should be given to a federal appeals court's interpretation of the law of a state within its circuit unless the court overlooked a prior state court decision or the decision was superseded by a later pronouncement from the state legislature or a higher court. *Desiano v. Warner-Lambert & Co.*, 467 F.3d 85, 89 (2nd Cir. 2006) and *Booking v. General Star Mgmt. Co.*, 254 F.3d 414, 421 (2nd Cir. 2001). This is known as the "home circuit" rule, in which even federal appellate courts "defer to the local circuit's view of the law of a state in its jurisdiction when that circuit has made a reasoned inquiry into state law, unless we are convinced that the court has ignored clear signals emanating from the state courts." *Charter Oil Co. v. American Employers' Ins. Co.*,

5

69 F.3d 1160, 1164 (D.C. Cir. 1995). *See also,* 17A-124 Moore's Federal Practice - Civil § 124.22 [4] (3rd ed.) ("When a higher federal court has ruled on a particular point of state law, a lower court must ordinarily follow that decision in the absence of an intervening authoritative state decision").

Hussmann's contention that this Court should adopt and follow the non-precedential decision of a District Court sitting in Illinois where the basis for that decision has been specifically repudiated by the Eighth Circuit, sitting in Minnesota and applying Minnesota law, must be rejected. Moreover, as the *Harleysville* Court pointed out, U.S. District Courts are not bound by intermediate state court decisions, even published ones. *Harleysville*, 716 F.3d at 457. The unpublished and non-precedential Minnesota appellate court decision cited by Hussmann dealt with an indemnity provision very different from the one at issue here and also was based on that court's interpretation of the same *Yang* footnote repudiated by the Eighth Circuit. Certainly, two unpublished, non-precedential decisions do not constitute the clear signals emanating from the state's highest court justifying an application of those cases in the face of a binding, precedential Eighth Circuit decision.

Hussmann's argument that the indemnity agreement "links the indemnity to the acts or omissions or failures of Hussmann" (Hussmann Rsp., p. 15) is nothing more than an attempt to re-write the agreement as Hussmann would now like it to read by omitting the very language which triggers the indemnity obligation. The clause actually provides that the duty to indemnify Target is triggered by claims **"arising out of or otherwise relating to the subject matter of the Agreement**, Supplier's performance or failure to perform as required by this Agreement, Supplier's acts or omissions, **or** Supplier's failure to comply with any of Supplier's representations or warranties[.]" (Target SOF [Dkt. No. 252] 20-21 (emphasis added).) Hussmann wants either to change the word "or" to "and" or to have this Court delete the triggering duty to indemnify even though Hussmann itself agreed to the broad language requiring it to indemnify Target not only for claims based on Hussmann's fault, but for *any* claims *arising from or related* to the contract. It is a well-

6

settled that when construing a contract, every provision must be given effect and it is presumed that each clause is included for a reason. *State v. Great N. Ry. Co.*, 119 N.W. 202 (Minn. 1908). Hussmann's plea that the clause which triggers its duty to defend and indemnify Target be written out of the contract is contrary to basic rules of contract construction and simply has no legal basis whatsoever.

As the *Harleysville* Court explained, three fundamental rules must be followed in construing a contract: first, unambiguous words will be given their plain and ordinary meaning; second, the contract is read as a whole document; and third, common sense must not be abandoned. 716 F.3d at 459. The parties agreed to a broad indemnification provision. It applies to *any* claim arising out of the subject matter of the contract, not just claims where Target is not alleged to be at fault. Hussmann's unwarranted and restrictive interpretation of a contractual provision clearly intended to provide broad protection is not supported by the plain language of the contract, by the Eighth Circuit's ruling on the interpretation and enforcement of indemnity agreements, or by basic rules of contract construction. As the Eighth Circuit and the Supreme Courts of both Illinois and Minnesota have held, the Court should not create an ambiguity where none exists. *Id.* at 458; *Grzeszczak v. Illinois Farmers Ins. Co.*, 659 N.E.2d 952, 959 (Ill. 1995); *Savela v. City of Duluth*, 806 N.W.2d 793, 799 (Minn. 2011).

**B. Whether Minnesota or Illinois law applies, the result is the same.**

As Target noted in its memorandum, the contract provides that Minnesota law shall govern all matters arising out of or related to the contract. [Dkt. No. 241, p. 7.] Forum selection clauses normally are applied, but not always. For instance, a clause making a construction contract subject to another state's laws is not enforceable in Illinois. 815 ILCS 665/10. Target's brief demonstrated that there was no public policy prohibition against enforcing the indemnity provision at issue here and that there is no difference between Illinois and Minnesota law on this issue. Hussmann has made no

showing of any relevant difference. Thus, this Court need not "entangl[e] itself in messy issues of conflict of laws" because Illinois and Minnesota law are in accord with respect to the contract issues at hand. *Barron v. Ford Motor Co. of Canada*, 965 F.2d 195, 197 (7th Cir. 1992).

    **C. The issue of Hussmann's duty to indemnify is ripe for ruling.**

Illinois and Minnesota law are again in accord on the issues of when the duty to defend and pay defense costs arises and when the duty to pay a judgment or settlement, pursuant to an indemnification provision, is triggered. In determining whether a duty to defend exists, the Court will compare the allegations of the complaint to the relevant language of the insurance contract. The duty to defend is broader than the duty to indemnify for damages. A duty to defend generally covers those claims that arguably fall within the relevant language of the insurance contract. *Meadowbrook, Inc. v. Tower Ins. Co.*, 559 N.W. 2d 411, 415 (Minn. 1997); *Ill. State Bar Ass'n Mut. Ins. Co. v. Cavenagh*, 983 N.E.2d 468 (Ill. App. 2012). Where an underlying action settles before trial, the party seeking indemnification need only show it *could have been* liable at trial, not whether it would have been liable. *Netherlands Ins. Co. v. Main St. Ingredients, LLC*, 745 F.3d 909, 913 (8th Cir. 2014). As in Illinois, the obligation to defend is contractual in nature and is determined by the allegations of the complaint under Minnesota law. *Prahm v. Rupp Constr. Co.*, 277 N.W.2d 389, 390 (Minn. 1979). If any part of a cause of action is arguably within the scope of coverage, the insurer must defend. *Prahm*, 277 N.W. 2d at 390; *Bedoya v. Illinois Founders Ins. Co.*, 668 N.E.2d 757 (Ill. App. 1997). Any ambiguity is resolved in favor of the insured, and the burden is on the insurer to prove that the claim clearly falls outside the coverage afforded by the policy. *Id.* If the claim is not clearly outside coverage, the insurer has a duty to defend. *Id.*

The interpretation of an insurance policy and application of the policy to the facts of a case are questions of law. *Remodeling Dimensions, Inc. v. Integrity Mut. Ins. Co*, 819 N.W.2d 602, 610 (Minn. 2012). Insurance policies are contracts and, absent statutory provisions to the contrary, general

principles of contract law apply. *Id.* at 611. Likewise, indemnity agreements are contracts. Minnesota and Illinois courts are charged with interpreting contracts in such a way as to give effect to the parties' intent. *Residential Funding Co. v. Terrace Mortg. Co.*, 725 F.2d 910, 916 (8th Cir. 2013) (*citing Motorsports Racing Plus, Inc. v. Arctic Cat Sales, Inc.*, 666 N.W.2d 320, 323 (Minn. 2003)); *Smith v. West Suburban Med. Ctr.*, 922 N.E. 2d 549 (Ill. App. 2010). This is especially so where the intent of the parties is clear and unambiguous. *Hanover Ins. Co. v. Smith*, 796, 538 N.E.2d 710, 712 (Ill. App. 1989); *Thommes v. Milwaukee Ins. Co.*, 641 N.W.2d 877, 882 (Minn. 2002).

Just as with an insurance policy, whether a duty to defend exists is to be determined by the terms of the contract and the allegations contained in the pleadings.[2] The Illinois Appellate Court explained this rule in *McNiff v Millard Maint. Serv. Co.*, 715 N.E. 2d 247 (Ill. App. 1999), in which the Court held that the use of the word "defend" in the indemnity agreement required the indemnitor to protect the indemnitee against the allegations of the complaint and that whether such a duty is triggered depends solely on the allegations in the complaint *Id.* at 251. The Court held:

> JMB [Indemnitee] asserts that it is entitled to reimbursement of its attorney's fees and costs based upon the above-quoted contract provision, specifically, that portion which states that Millard would "protect, **defend**, \*\*\* and **hold [JMB] harmless** \*\*\* from and against any and all **claims**, **actions**, liabilities, losses, damages, costs and expenses **relating to** any and all claims." JMB emphasizes the use of the word "defend" in the agreement, arguing that Millard's obligation to defend it from plaintiff's allegations necessarily included providing the legal services necessary to rebuff McNiff's suit. … We agree that the use of the word "defend" in the agreement requires Millard to protect JMB against the allegations of plaintiff's suit relating to Millard's work.

---

[2] Hussmann's contention that the duty to indemnify cannot be determined until the underlying case has been resolved (Hussmann Rsp. at p. 8) confuses the duty to defend pursuant to an indemnification agreement with the duty to indemnify the indemnitee for damages paid to a third party. The duty to defend is triggered by the allegations of the pleadings. The cases relied upon by Hussmann discuss the duty to indemnify an insured for damages assessed against the insured, not the duty to indemnify for defense costs and attorneys' fees. Obviously, the duty to indemnify for damages incurred by way of judgment or settlement is not defined or recoverable until the damages have been assessed. *Medline Indus., Inc. v. Ram Medical, Inc.*, 892 F. Supp. 2d 957, 964-965 (N.D. Ill. 2012), relied upon by Hussmann, specifically provides that "a claim for breach of duty to defend is ripe during the pendency of the underlying suit."

9

*Id.* at 251. Like the language interpreted by the *McNiff* Court, the indemnity agreement at issue here requires Hussmann to defend, indemnify, and hold harmless Target for, *inter alia,* claims, suits, costs, damages, and expenses, including attorneys' fees, arising from the contract. The Target/Hussmann contract contains an even broader indemnity obligation than did the one in *McNiff*:

> [Hussmann] shall **defend**, indemnify and **hold harmless** Target … from and against **any** liabilities, losses, **claims**, **suits**, damages, costs and expenses (including without limitation reasonable attorneys' fees and expenses) … **arising out of or otherwise relating to** *the subject matter of this Agreement* …

(Target SOF 22, Docket 242-1, p. 14 of 21 (emphasis added).) Very simply, a suit has been filed and Target has incurred defense costs and expenses in defending it. The clear and unambiguous language in the contract states that the obligation to defend arises when a claim or suit is made or filed, not when it has been resolved. Hussmann is required to provide Target with a defense against claims and suits, not *proven claims* or *resolved suits*. Plaintiff claims that within two months of the installation of the Hussmann equipment and the opening of that section of the subject Target store, the equipment failed and leaked water onto the floor. (Dkt. No. 155, p. 1325-1326). Plaintiff alleges she was caused to slip and fall because water leaked from a broken drain on a Hussmann freezer, caused by Hussmann's negligent manufacture, construction, and installation of the drain on its equipment. (Dkt. No. 155, p. 1331-1335). Plaintiff further asserts that Hussmann is strictly liable for her injuries due to the defective product it sold to Target. (Dkt. No. 155, p. 1335-1337.) The subject matter of the agreement between Target and Hussmann was the sale of the freezer and refrigeration cases that are alleged to have caused Plaintiff's injuries. It is indisputable that Plaintiff's claim and Target's damages arise out of and are related to the subject of the agreement. Nothing about the contract's indemnity requirement, in light of the allegations of the complaint, is unclear or ambiguous. Thus, the duty to defend has been triggered. Hussmann has breached its duty by refusing to defend and indemnify Target. Target has incurred damages in that it has had to expend considerable sums of

money defending itself. While the full amount of Target's damages may not be determined at this time, the fact that damages have been incurred is not subject to dispute. In *Smith*, the Court explained that even though the claim at issue had not yet been resolved, it was the claim itself, not its ultimate resolution, which triggered the duty to provide a defense. A claim has been made and a lawsuit has been filed. Under the clear and unambiguous language of the indemnity agreement, the duty to defend has been triggered. The determination of whether Hussmann has a duty to indemnify Target for its defense costs and fees is not premature. The ultimate damages have not yet been determined, so the ultimate indemnification owed for any settlement or judgment paid cannot presently be determined. This does not mean there is no duty to indemnify for the costs and fees incurred or that it is premature to make such a determination. "A claim for breach of duty to defend is ripe during the pendency of the underlying suit." *Medline Indus.*, 892 F. Supp. 2d at 964-65.

Moreover, the phrase "arising out of" in the contract does not mean it must be proved that Hussmann's conduct proximately caused the damages for which indemnification is sought. To the contrary, the decisions discussed at length at pages 11-12 of Target's memorandum illustrate conclusively that if the accident would not have occurred but for the product being used, the duty to indemnify exists whether the product was defective or not and whether the freezer sold by Hussmann "caused" the incident or not. The fact is that the water was on the floor because of the use of the Hussmann cooler, which is sufficient to trigger the indemnity obligation contained in the contract. As the Court held in *West Am. Ins. Co. v. Bedwell*, 715 N.E. 2d 759, 763 (Ill. App. 1999):

> We also disagree with West American's assertion that the injury was not caused by the golf cart and, therefore, it owes no duty to Curtis. The policy uses the language "arising out of" when describing its coverage. The phrase 'arising out of' is both broad and vague, and must be liberally construed in favor of the insured; accordingly, 'but for' causation, not necessarily proximate causation, satisfies this language. 'Arising out of' has been held to mean 'originating from,' 'having its origin in,' 'growing out of' and 'flowing from.'

In that case, the golf cart was neither defective nor the cause of the plaintiff's injury, yet the duty to defend was imposed because of the broad meaning attributed to the phrase "arising out of." Similarly, Hussmann's duty to defend and indemnify Target has been triggered by the agreement that Hussmann would defend and indemnify Target if a claim or suit was brought against Target "arising out of or otherwise relating to" the subject matter of the agreement—the sale of the refrigeration equipment. In both Illinois and Minnesota, "arising out of" has the same meaning in indemnity agreements as in insurance policies. *Smith*, 922 N.E. 2d at 1002; *Faber*, 250 N.W.2d at 822; *Harleysville*, 716 F.3d. at 459.

### D. Hussmann has failed to provide Target with a defense to this lawsuit and by failing to do so has breached the contract.

Hussmann agreed to obtain an insurance policy naming Target as an additional insured. The policy was to provide Target with coverage for third party claims, such as Plaintiff's claim here, whether such claims are brought directly against Target or against Target and Hussmann as co-defendants. In addition, the policy was required to cover products and completed operations, as involved here.[3] The coverage also was required to be primary and to provide for severability of interests and to cover claims "arising out of this Agreement." The actual provision is set out below:

> **7.2 Commercial General Liability Insurance Requirements.**
> Supplier's Commercial General Liability insurance shall designate Target as an additional insured by endorsement acceptable to Target. Designation of Target as an additional insured shall include as an insured with respect to third party claims or actions brought directly against Target or against Target and Supplier as co-defendants and arising out of this Agreement. Supplier's insurance shall include products and completed operations liability coverage, contractual liability coverage for liabilities assumed by Supplier under this Agreement, and coverage for property in the care, custody, or control of Supplier. Supplier's insurance shall be primary and required to respond to and pay prior to any other available coverage of Target. Supplier's insurance also shall provide for severability of interests.

---

[3] Hussmann contends that punitive damages are not insurable. (Hussmann Rsp. at p. 9.) In fact, both Illinois and Minnesota allow a party to obtain insurance for punitive damages if the damages are awarded based on vicarious liability. Minn. Stat. § 60A.06; *Perl v. St. Paul Fire & Marine Ins. Co.*, 345 N.W. 2d 209, 216 (Minn. 1984); *International Surplus Lines Ins. Co. v. Pioneer Life Ins. Co.*, 568 N.E. 2d 9, 17 (Ill. App. 1990).

(Target SOF 24 and Ex. A.) As has been set forth in detail above, both Minnesota and Illinois courts define the phrase "arising out of" extremely broadly. Again, there would be no claim to defend here but for the subject matter of the agreement – the sale of the freezer case to Target, which leaked and allegedly caused Plaintiff to slip and fall. If Hussmann had procured the insurance policy required under the contract, Target would be afforded a defense under said policy. Target's tender of defense has never been accepted; thus, Hussmann is in breach of its contractual obligation to provide coverage to Target for the instant claim, pursuant to both the agreement to insure Target and the indemnity agreement.

Presumably because it is the entity ultimately liable for any damages its insurer must pay on Target's behalf, Hussmann argues, based on the endorsement, that the insurance it procured did not afford Target coverage for Plaintiff's claim. (Hussmann Rsp. at p. 11). While this is not a declaratory judgment action to determine whether the policy affords coverage to Target, it is readily apparent that Hussmann agreed, through its contract with Target, to procure comprehensive general liability insurance naming Target as an additional insured for third party claims "arising out of the Agreement," which includes the instant claim. As set forth above, if an insurance policy would afford coverage to an insured under any set of facts consistent with the allegations needed to support recovery on any theory raised in the complaint, the insurer cannot simply refuse to defend. *Prahm*, 277 N.W.2d at 390; *American Country Ins. Co. v. James McHugh Constr. Co.,* 801 N.E.2d 1031 (Ill. App. 2003). Hussmann self-insured its obligations through a fronting insurance policy (Target SOF 34) and now refuses to honor its obligation to afford Target a defense for Plaintiff's claim.

Hussmann attempts to avoid its duty by again arguing that this Court should ignore basic rules of contract construction and re-write its contractual obligation to focus only on the first sentence of the insurance provision. It claims that because it obtained a policy with an endorsement that limited the coverage afforded to Target to claims "with respect to liability to the extent caused

by you and arising out of your operations or premises owned by or rented to you," its contractual obligation to insure Target against claims arising out of the Agreement has somehow been negated. There is no evidence whatsoever that Target ever approved the endorsement or was even provided a copy of it prior to defense counsel obtaining it in this case.

Moreover, despite Hussmann's argument to the contrary, the endorsement is certainly broad enough that when the pleadings and the endorsement are compared, Target is owed a defense. The additional insured endorsement, when compared with the allegations of the complaint, wherein Plaintiff alleges a defect in the Hussmann freezers caused her injuries, certainly constitutes liability caused by Hussmann and certainly arises out of Hussmann's operations—selling the very equipment which purportedly caused Plaintiff to be injured. When the contract is read as a whole document, giving meaning to every provision therein, it is clear that the parties intended that Hussmann would defend and indemnify Target for claims related to the equipment sold by Hussmann. Both the indemnity provisions and the insurance provisions of the contract required Hussmann to provide a defense to Target for the instant lawsuit. Hussmann has refused to honor its contractual obligation to provide Target with a defense of this action; therefore, it has breached its contractual obligations.

Target has been damaged due to Hussmann's failure to provide Target with a defense in that Target has incurred defense fees and costs which Hussmann agreed to pay through the indemnity agreement and through the purchase of an insurance policy affording coverage to Target "with respect to third party claims or actions brought directly against Target or against Target and Supplier as co-defendants and arising out of this Agreement." The contract clearly and unambiguously required Hussmann to procure an insurance policy naming Target as an additional insured on a primary and noncontributory basis. Hussmann has denied that it is obligated to defend Target or to indemnify Target for any damages it may become liable to pay as a result of this litigation through the fronting insurance policy it procured or through its indemnity obligations. It matters not

14

whether the policy is ultimately determined to afford coverage to Target, thus requiring that Target be reimbursed for its fees and costs and liability for damages, or whether Hussmann failed to procure the broad insurance it agreed to provide. Under either scenario, Target's fees and expenses would have been paid if Hussmann had complied with its contractual obligations. Hussmann unquestionably has breached its contractual obligations, thus entitling Target to summary judgment as a matter of law as to Count VII of its Crossclaim.

### III. Conclusion

When the contract is read, as a whole document, giving meaning to each and every phrase and word, it is clear that the intent of the parties was that Target would be afforded a defense and indemnification by Hussmann and its insurer for any damages assessed against Target. Here, Hussmann has self-insured the risks covered by the insurance policy, has acknowledged, through ESIS, the tender of defense and request for indemnification (Target SOF 30), and has failed to provide a defense as required by applicable law. For the reasons set forth above and in Target's memorandum of law in support of its motion for partial summary judgment, Target is entitled to summary judgment as to Counts VI and VII of Target's Crossclaim.

WHEREFORE, Defendant/Cross-Plaintiff, TARGET CORPORATION, pursuant to Federal Rule of Civil Procedure 56, respectfully prays this honorable Court grant its motion for partial summary judgment.

    Respectfully submitted,

    JOHNSON & BELL, LTD.

By:   /s/ Robert M. Burke
      One of the attorneys for Target Corporation

Robert M. Burke
JOHNSON & BELL, LTD.
33 W. Monroe St., Suite 2700
Chicago, Illinois 60603
(312) 372-0770
burker@jbltd.com

**NOTICE OF FILING AND CERTIFICATE OF SERVICE**

I hereby certify that on March 6, 2015, I electronically filed the foregoing **Target's Reply to Hussmann Corporation's Response to Target's Motion for Partial Summary Judgment** with the Clerk of the United States District Court for the Northern District of Illinois using the CM/ECF system and that a copy of said filing was on the same date to be served upon all counsel of record by the same CM/ECF system.

/s/ Robert M. Burke