# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

LYNN KRUIS,

    Plaintiff,

v.

TARGET CORPORATION, et al.,

    Defendants.

No. 12 CV 5675

Judge Manish S. Shah

## MEMORANDUM OPINION AND ORDER

Lynn Kruis slipped on a clear liquid while shopping and sued several defendants for negligence. One defendant is Target Corporation—Kruis slipped in a Target store. Another defendant is Hussmann Corporation—Hussmann made the freezer that Kruis says leaked, causing her fall. In this motion for partial summary judgment, Target argues that (1) Hussmann is contractually obligated to defend Target in this suit; and (2) Hussmann breached its obligation to procure appropriate insurance covering Target. For the reasons below, Target's motion is granted.

## I. Legal Standards

Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. *Spurling v. C & M Fine Pack, Inc.*, 739 F.3d 1055, 1060 (7th Cir. 2014); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material fact exists, the court

must construe all facts and reasonable inferences in the light most favorable to the nonmoving party. *CTL ex rel. Trebatoski v. Ashland Sch. Dist.*, 743 F.3d 524, 528 (7th Cir. 2014). "When the material facts are not in dispute, the existence and interpretation of a contract are questions of law that the court may decide on a motion for summary judgment." *Citadel Group v. Wash. Reg'l Med. Ctr.*, 692 F.3d 580, 587 (7th Cir. 2012). The contract analysis here is governed by Minnesota law.[1]

## II. Facts[2]

Lynn Kruis slipped on a clear liquid at a Target store. HSOF ¶ 7. Kruis alleges that the liquid came from a defective Hussmann freezer. TSOF ¶ 11. Target and Hussmann's relationship concerning the freezer is governed by a contract. HSOF ¶ 1; TSOF ¶¶ 20, 22–23, 26–27. The contract contains the following indemnification provision (Hussmann is referred to as the "Supplier"):

---

[1] The contract specifies that Minnesota law governs. TSOF Ex. B § 11.2. In this diversity case, Illinois choice-of-law rules apply. *Spitz v. Proven Winners N. Am., LLC*, 759 F.3d 724, 729 (7th Cir. 2014). Illinois follows the Restatement (Second) of Conflict of Laws. *Morris B. Chapman & Assocs., Ltd. v. Kitzman*, 193 Ill.2d 560, 568–69 (2000). So Minnesota law governs unless (1) Minnesota has "no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice," or (2) applying Minnesota law "would be contrary to a fundamental policy of a state which has a materially greater interest . . . ." *Old Republic Ins. Co. v. Ace Prop. & Cas. Ins. Co.*, 389 Ill.App.3d 356, 363 (1st Dist. 2009) (quotation marks omitted). Neither side argues that either exception applies, and I see no reason why either would, so Minnesota law governs. Hussmann relies on a decision from this district, *Brown v. Target Corp.*, 2013 U.S. Dist. LEXIS 151771 (N.D. Ill. 2013). But "[b]ecause Minnesota law applies, [I am] called on to predict how the Minnesota Supreme Court would answer the central legal question presented here." *Lyon Fin. Servs. v. Ill. Paper & Copier Co.*, 732 F.3d 755, 756 (7th Cir. 2013). I must predict what the Minnesota Supreme Court would do, even if that results in inconsistency with another court in this district.

[2] The facts are taken from the parties' Local Rule 56.1 statements. "TSOF" refers to Target's statements, with Hussmann's responses [252]. "HSOF" refers to Hussmann's statements, with Target's responses [266]. Facts concerning Kruis's allegations are taken from the third amended complaint [155] and are assumed true for present purposes.

2

> Supplier shall defend, indemnify and hold harmless Target, its affiliates, and their respective directors, officers, shareholders, employees, contractors and agents (the "Target Parties") from and against any liabilities, losses, claims, suits, damages, costs and expenses (including without limitation, reasonable attorneys' fees and expenses) (each, a "Claim") arising out of or otherwise relating to the subject matter of this Agreement, Supplier's performance or failure to perform as required by this Agreement, Supplier's acts or omissions, or Supplier's failure to comply with any of Supplier's representations or warranties contained in this Agreement. Any attorney selected by Supplier to defend Target Parties must be reasonably satisfactory to Target. Supplier may not settle a Claim (in whole or in part) without Target's prior written consent.

TSOF ¶ 25. The contract also contains the following provision concerning insurance coverage:

> Supplier's Commercial General Liability insurance shall designate Target as an additional insured by endorsement acceptable to Target. Designation of Target as an additional insured shall include as an insured with respect to third party claims or actions brought directly against Target or against Target and Supplier as co-defendants and arising out of this Agreement. Supplier's insurance shall include products and completed operations liability coverage, contractual liability coverage for liabilities assumed by Supplier under this Agreement, and coverage for property in the care, custody or control of Supplier. Supplier's insurance shall be primary and required to respond to and pay prior to any other available coverage of Target. Supplier's insurance also shall provide for a severability of interests.

TSOF Ex. B § 7.2.

### III. Analysis

Target moves for partial summary judgment, arguing that Hussmann (1) has a duty to defend Target; and (2) breached its duty to procure insurance covering

3

Target.³ Hussmann responds that neither its duty to defend nor its duty to procure insurance extends to claims asserted against Target for Target's own negligence.

   **A. Duty to Defend**

Under Minnesota law, when a party argues that it was indemnified for its own negligence, the relevant provision is strictly construed and indemnification is not found unless it is provided for by clear and unequivocal language.⁴ *Yang v. Voyagaire Houseboats, Inc.*, 701 N.W.2d 783, 791–92 n.5 (Minn. 2005); *Farmington Plumbing & Heating Co. v. Fischer Sand and Aggregate, Inc.*, 281 N.W.2d 838, 842 (Minn. 1979). The language must "fairly apprise[]" the indemnitor of the scope of its obligation. *Yang*, 701 N.W.2d at 791 n.5.

In relevant part, the agreement states that Hussmann "shall defend . . . Target . . . against any . . . claims . . . arising out of or otherwise relating to the subject matter of this Agreement . . . ." TSOF ¶ 25. The subject matter of the agreement is the purchase of Hussmann freezers for use in Target stores. Kruis alleges that Target was negligent in several ways, but the use of Hussmann freezers

---

³ Target did not seek a declaration that Hussmann owes a duty to defend, nor did Target plead that Hussmann breached such a duty. *See* [161] at Counts V, VI, and VII. But both Target and Hussmann briefed the present motion as if a declaration was sought, effectively amending Target's pleading. *See A.I. Credit Corp. v. Legion Ins. Co.*, 265 F.3d 630, 638 (7th Cir. 2001); *Whitaker v. T.J. Snow Co.*, 151 F.3d 661, 663 (7th Cir. 1998); *Walton v. Jennings Cmty. Hosp.*, 875 F.2d 1317, 1320 (7th Cir. 1989); *Cf.* Fed.R.Civ.P. 15(b)(2). Target's initial failure to seek a declaration therefore does not prevent me from issuing one. Given the fulsome briefing on both sides, and the likelihood that a declaration will materially advance the litigation, I resolve Target's motion on the merits.

⁴ The "indemnification" discussed in this opinion relates to Hussmann's duty to defend (and "indemnify" for defense costs incurred). As both sides acknowledge, the question of whether Hussmann must indemnify Target for any payment ultimately made to Kruis is not ripe. [251] at 8; [267] at 9 n.2.

4

is a "but for" cause of any claim she has against Target. *See* [155] at 12–38. In short, were it not for the alleged leak from a Hussmann freezer, Kruis wouldn't have fallen, been damaged, or brought suit—against *any* defendant, including Target. That means that her claims against Target "arise out of" the subject matter of the Target-Hussmann agreement (even though her claims have not yet been resolved and liability for her injuries not yet determined). *See Faber v. Roelofs*, 311 Minn. 428, 436–37 (1977); *Eng'g & Constr. Innovations, Inc. v. L.H. Bolduc Co.*, 825 N.W.2d 695, 707 n.9 (Minn. 2013). The clear and unequivocal language of the agreement appears to obligate Hussmann to defend Target in this suit.

Hussmann argues otherwise, noting that the Minnesota Supreme Court has written that "[t]here must be an express provision in the contract to indemnify the indemnitee for liability occasioned by its own negligence; such an obligation will not be found by implication." [251] at 10 (quoting *National Hydro Sys. v. M.A. Mortenson Co.*, 529 N.W.2d 690, 694 (Minn. 1995)). In the next sentence, the *National Hydro* court wrote that agreements will not be construed to cover the indemnitee's own negligence "unless such intention is expressed in clear and unequivocal terms. . . ." 529 N.W.2d at 694. That is the case here. No "implication" is required because the "express provision" concerning indemnification is broad; even "strictly construed" it covers claims against Target for Target's own negligence. Hussmann emphasizes that the provision does not *explicitly* state that it covers harm "caused by the negligence of Target." HSOF ¶ 4; [251] at 2, 10, 13. But such magic words are not required. *Johnson v. McGough Constr. Co.*, 294 N.W.2d 286,

5

288 (Minn. 1980); *Bogatzki v. Hoffmann*, 430 N.W.2d 841, 843, 845 (Minn. Ct. App. 1988) (applying *McGough* and finding indemnification for lessor's own negligence where tenant contracted to "indemnify . . . lessor against . . . all claims . . . for personal injury, wrongful death or property damage arising out of any act or occurrence committed or happening in or from the premises.").

In *Yang*, the Minnesota Supreme Court held against the indemnitee in a case involving broad indemnification language, but facts that were important to the *Yang* decision are not present here. In *Yang*, the indemnitee was a company that leased houseboats for recreational use, the agreement was their standard form agreement, and the indemnitor, Lao Xiong, was an individual who did not understand the agreement. *Id.* at 786–87. While Xiong and his family were using the boat, they suffered carbon monoxide poisoning, and it was later determined that the carbon monoxide detector was disconnected. *Id.* at 787. When Xiong's family members sued the company, the company argued that Xiong had to defend and indemnify it. *Id.* at 788. The court focused on questions of public policy and found the indemnification provisions unenforceable. *Id.* at 792. In a footnote, it reached the same result on the alternative reasoning that the language in the indemnification provisions was not clear and unequivocal. *Id.* at 791 n.5. The court noted that "the indemnification clauses do not contain language that (1) specifically refers to negligence, (2) expressly states that the renter will indemnify Voyagaire for Voyagaire's negligence, or (3) clearly indicates that the renter will indemnify Voyagaire for negligence occurring before the renter took possession of the

6

houseboat." *Id*. "Overall," the court could not "say that the language in the indemnification clauses fairly apprised *Xiong* of an obligation to indemnify Voyagaire not only for his own negligence that occurred while he was using the houseboat, but also the negligence of Voyagaire *that occurred before the rental term began*." *Id*. (emphasis added).

As emphasized above, the *Yang* court asked whether the indemnification provision fairly apprised Xiong, specifically, of his obligations, taking into account his lack of sophistication. And the case involved the unusual duty to indemnify the company for its own prior negligence (which predated its relationship with Xiong). Neither circumstance is present here. Both circumstances were used to distinguish *Yang* in *Harleysville Ins. Co. v. Physical Distrib. Servs.*, 716 F.3d 451, 458 (8th Cir. 2013). The indemnification provision in *Harleysville* was:

> PDSI hereby indemnifies and saves MILLER harmless from any and all claims, actions, or causes of action in any way relating to personnel assigned to MILLER, including, but not limited to, personal injury, workers compensation, third party claims, Social Security, unemployment compensation, and taxes or other required withholding of whatever nature.

*Id*. at 455–56 (internal marks omitted). Although the provision did not explicitly mention Miller's own negligence, the court held that the "plain meaning of the provision" was "clear and unequivocal enough to put PDSI on notice of its obligation to indemnify Miller . . . even if Miller's own negligence caused the bodily injury." *Id*. at 457; *see also id*. at 458 ("Unless 'any' does not mean *any* or 'personal injury' does not mean *personal injury*, we see nothing equivocal about this provision.") (emphasis in original). The same is true of the provision in the contract here, and I

7

find the Eighth Circuit's opinion in *Harleysville* persuasive.[5] Accordingly, Hussmann's duty to defend extends to Kruis's claims against Target.

### B. Duty to Procure Insurance

Hussmann was required to procure insurance covering Target for "claims . . . brought directly against Target . . . arising out of this Agreement." TSOF Ex. B § 7.2. Hussmann was to do so by amending its insurance policy to "designate Target as an additional insured by endorsement acceptable to Target." HSOF ¶ 5. Hussmann obtained an endorsement, but concedes that it does not cover claims against Target for Target's own negligence. TSOF ¶ 33; HSOF ¶ 6. Hussmann argues that its obligations did not extend that far. [251] at 11.

Hussmann argues that because it was required to obtain an endorsement that was "acceptable to Target," and because the endorsement it obtained does not cover Target's negligence, it must be that Hussmann was not *required* to insure against Target's negligence. [251] at 11. But the fact that Hussmann was *supposed* to obtain an acceptable endorsement does not mean that whatever endorsement it obtained necessarily *was* acceptable. Hussmann's argument might make sense if it

---

[5] In both *National Hydro* and *Braegelmann v. Horizon Dev. Co.*, 371 N.W.2d 644, 646 (Minn. Ct. App. 1985), the contractual language specified the circumstances of indemnification that when strictly construed, excluded the indemnitee's own negligence. In *National Hydro*, the indemnitor (a contractor) was obligated to indemnify for claims which arose out of "performance *of the WORK by CONTRACTOR* . . . ." *Nat'l Hydro*, 529 N.W.2d at 692 (emphasis added). The court specifically relied on that language to strictly construe it against indemnification more broadly. *Id.* at 694. In *Braegelmann*, the provision on its face only applied to an injury "to the extent caused" by the indemnitor's negligence. 371 N.W.2d at 645. Under the strict construction rule, there was no indemnification for the indemnitee's negligence. *Id.* at 646. Neither case had an indemnification provision that was written as broadly as the one in Hussmann's contract with Target.

8

was shown that the endorsement was in fact acceptable to Target; but that hasn't been shown. The endorsement is an agreement between Hussmann and its insurer—Target is not a party and there is no evidence that Target "accepted" the endorsement as satisfying Hussmann's obligations. HSOF ¶ 6 (Target's response). The endorsement does not mention Target at all—it refers generically to *any* party that Hussmann contracts to insure.[6] There is no reason to use the endorsement to define or modify the contractual duties that Hussmann owed Target.

The insurance provision in the Target-Hussmann contract is as clear and unequivocal as the defense and indemnification provision. Hussmann was required to add Target as an additional insured with respect to third party claims brought against Target "arising out of this Agreement" and this provision, even strictly construed, includes claims asserted against Target for Target's own negligence. Hussmann admits that it did not procure the required insurance, so Target is entitled to summary judgment on Count VII.

---

[6] The endorsement was filed under seal. No further description is required for present purposes.

## IV. Conclusion

For the foregoing reasons, Target's motion for partial summary judgment [240] is granted. Hussmann (1) was and is required to defend Target in this suit; and (2) breached its duty to procure insurance covering Target for liability that may arise from this suit.

ENTER:

/s/ Manish S. Shah
Manish S. Shah
United States District Judge

Date: 4/22/15

10