# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| LYNN KRUIS, ) | |
| ) | |
| *Plaintiff*, ) | |
| ) | |
| v. ) | No. 2012 CV 5675 |
| ) | |
| TARGET CORPORATION, a foreign ) | Judge Manish S. Shah |
| corporation, CONLON CONSTRUCTION ) | |
| COMPANY, a foreign corporation, ) | |
| HUSSMANN CORPORATION, a foreign ) | |
| corporation, SHERMAN MECHANICAL, ) | |
| INC., an Illinois corporation and AMERICAN ) | |
| TEMPERATURE SERVICE, INC., a foreign ) | |
| corporation, ) | |
| ) | |
| *Defendants*. ) | |
| ) | |
| TARGET CORPORATION, ) | |
| ) | |
| *Third-Party Plaintiff,* ) | |
| ) | |
| v. ) | |
| ) | |
| CONLON CONSTRUCTION COMPANY, ) | |
| GENERAL REFRIGERATION SERVICE ) | |
| CORPORATION, HUSSMAN CORPORATION, ) | |
| and SHERMAN MECHANICAL, INC. ) | |
| ) | |
| *Third Party Defendants.* ) | |

**Hussmann's Reply in Support of its Motion for Reconsideration or,
Alternatively, for Immediate Appeal Pursuant to
Either Fed. R. Civ. P. 54(b) or 28 U.S.C.A. § 1292(b)**

## I. Introduction

The issue before the Court is whether the broad indemnity language in the Supplier Qualification Agreement requires Hussmann to defend and indemnify Target for Target's own acts of negligence. Target claims the issue of defense is now moot because Hussmann's insurer recently agreed to defend Target subject to a reservation of rights. (Doc. 287 at 3). Target also claims the issue of indemnity is not ripe. *Id.* at 2. If Target is right—that the defense issue is moot and the indemnity issue is not ripe—then the Court should vacate its order granting Target's motion for partial summary judgment. Otherwise, the Court's April 22, 2015 order presents a very important issue, both to this case and to public policy as a whole.

In responding to Hussmann's motion, Target relies entirely on the Eighth Circuit's ruling in *Harleysville Inc. Co. v. Physical Distrib. Servs.*, 716 F.3d 451 (8th Cir. 2013). But Target is dead wrong in stating that *Harleysville* is "binding, precedential" and "controlling" on this Court. (Doc. 287 at 4, 7). Federal jurisprudence has long held that the highest court in the state—here, the Minnesota Supreme Court—is the controlling authority. As discussed at length in Hussmann's brief, the Minnesota Supreme Court has twice ruled on this issue in both *National Hydro Systems v. M.A. Mortenson Co.,* 529 N.W.2d 690 (1995) and *Yang v. Voyagaire Houseboats, Inc.,* 701 N.W.2d 783 (2005). Target, however, does little to address either case other than to improperly say that *Harleysville* controls. Nor does Target squarely address the significant public policy considerations raised by holding that a broad, non-specific indemnity provision shifts liability. Essentially, Target's mantra is that this Court should follow *Harleysville* at all costs.

Hussmann respectfully submits that this Court's misapplication of the controlling authorities and undue reliance on the Eighth Circuit over the Minnesota Supreme Court constituted a manifest error of law. By holding that Hussmann is obligated to defend and

potentially indemnify Target for its own negligence, the Court exchanged the exception for the rule and, in so doing, did not give meaning to the intent of the contracting parties. The law requires that indemnity provisions designed to shift liability specifically, clearly and unequivocally express that intention. The provision at issue does not meet the standard.

Given the precedent from the highest court, coupled with the strong public policy concerns implicated by the Court's ruling, reconsideration and reversal of the Court's April 22, 2015 order is warranted. Alternatively, the Court should allow immediate appeal by certifying the summary judgment order as final pursuant to Federal Rule of Civil Procedure 54(b) or, alternatively, by granting the request for permissive interlocutory appeal pursuant to 28 U.S.C. § 1292(b).

## II. Argument

### A. This Court should reconsider and reverse its order granting Target's motion for partial summary judgment.

Contrary to Target's assertion that motions to reconsider are "proper only" when a court misunderstands a party, has made an error in apprehension, or there has been a significant change in the law or facts (Doc. 287 at 4), a motion for reconsideration also serves to address a court's "disregard, misapplication, or failure to recognize controlling precedent." *Oto v. Metropolitan Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000). Such is the case here.

As detailed in Hussmann's brief, the subject defense and indemnification provision at issue is strikingly similar to those in *Yang* and *National Hydro*. Consequently, those Minnesota Supreme Court rulings are binding on this Court. (Doc. 283 at 5-9). One of the most fundamental rules of the law, as declared by the United States Supreme Court 75 years ago, is that:

> [T]he highest court of the state is the final arbiter of what is state law. When it has spoken, its pronouncement is to be accepted by federal courts as defining state law unless it has later given clear and persuasive indication that its pronouncement will be modified, limited or restricted.

3

\* \* \*

> State law is to be applied in the federal as well as the state courts and it is the duty of the former in every case to ascertain from all the available data what the state law is and apply it rather than to prescribe a different rule, however superior it may appear from the viewpoint of 'general law' and however much the state rule may have departed from prior decisions of the federal courts.

*West v. Am. Tel. & Tel. Co.*, 311 U.S. 223, 236-37 (1940).

The Eighth Circuit's ruling in *Harleysville* is not, as Target claims, "binding, precedential" and "controlling." (Doc. 287 at 4, 7). Rather, the binding authority here comes from the Minnesota Supreme Court in *Yang* and *National Hydro*. As explained in Hussmann's brief, those cases are not materially distinguishable and should have controlled this Court's analysis. (Doc. 283 at 7-8). Target hardly argues otherwise.

Target says literally nothing about *National Hydro*, where the Supreme Court held that a similar provision did not "clearly and unequivocally express an intent" to shift liability. 529 N.W.2d at 694. And, in addressing *Yang*, Target makes the same mistake the *Harleysville* court did in saying that "*Yang* was decided on public policy grounds." (Doc. 287 at 8); *see also, Harleysville*, 716 F.4d at 457. *Yang* was <u>not</u> decided only on public policy grounds. Rather, the Supreme Court specifically explained that, "[a]lthough our emphasis here is on public policy factors, we *also* determine that the indemnification clauses are not enforceable because the language is not clear and unequivocal." 701 N.W.2d at n. 5 (emphasis added). This is a separate holding—one which, as correctly pointed out by the dissent in *Harleysville*, is untethered to the unique public policy factors in *Yang*, but rather, "focused on *the language* of the contract." 716 F.3d at 463 (emphasis in original).

Target's inability to effectively distinguish Minnesota Supreme Court precedent is revealed by its misplaced reliance on the purported "home circuit" rule. (Doc. 287 at 4-5, 7-9). Notably, Target offers no Illinois case law in support of the "home circuit" rule, and instead

4

relies upon cases from the Second Circuit and the District of Columbia Circuit.[1] Even still, Target manages to misapply the "home circuit" rule as defined by those jurisdictions.

The Second Circuit's analysis is *Desiano v. Warner-Lambert* is irrelevant given that the matter involved an interpretation of federal law where the court explicitly ruled that it needed to decide the matter for itself rather than defer to sister circuits. 467 F.3d at 92. The present case, of course, involves interpretation of state law. In *Booking v. General Star*, the Second Circuit deferred to the Fifth Circuit in applying Texas law because of a conflict between a Texas Supreme Court ruling and a subsequent statutory amendment. 254 F.3d at 420-21. Here, in contrast, there is no statutory amendment calling into question the Minnesota Supreme Court rulings. And last, in *Charter Oil Co. v. American Employer's*, the D.C. Circuit deferred to the Eighth Circuit as to the application of Missouri law because there was "no ruling from the Missouri courts" as to the disputed issue and the opposition did "not point[] to any Missouri case" interpreting the issue. 69 F.3d at 1164. That is not the situation here, where Hussmann relies on two Minnesota Supreme Court cases addressing the very issue at hand.

Disregarding the doctrine of *stare decisis*, Target argues that this Court should give "conclusive deference" to the Eighth Circuit unless, for example, the Eighth Circuit "overlooked a prior state court decision" or "ignored clear signals emanating from the state courts." (Doc. 287 at 7). To support its argument, Target reasons that because the Eighth Circuit's opinion in *Harleysville* acknowledged the Minnesota Supreme Court cases (*Yang* and *National Hydro*), they were not overlooked or ignored. Target's analysis misses the point. The import focuses not on whether the Eighth Circuit ignored the existence of the Minnesota Supreme Court cases, but rather, whether the Eighth Circuit ignored the law of the cases. Indeed, all of "home court" rule cases cited by Target rely on either *Factors Etc., Inc. v. Pro Arts, Inc.*, 652 F.2d 278, 283 (2nd

---

[1] *Desiano v. Warner-Lambert & Co.*, 467 F.3d 85 (2nd Cir. 2006); *Booking v. General Star Mgmt. Co.*, 254 F.3d 414 (2nd Cir. 2001); *Charter Oil Co. v. American Employers' Ins. Co.*, 69 F.3d 1160 (D.C. Cir. 1995).

Cir. 1981) or *Abex Corp. v. Maryland Cas. Co.*, 790 F.2d 119, 126 (D.C. Cir. 1986), which respectively conclude that "[t]he ultimate source for state law adjudication in diversity cases is the law as established by the constitution, statutes, *or authoritative court decisions of the state*" and advocate rejecting circuit courts when they have "misread state law." Therefore, the simple fact that the Eighth Circuit reviewed Minnesota Supreme Court cases is irrelevant when, as here, it misapplied the case law.

Put simply, the "home court" rule does not apply and there is no need, nor basis, to deviate from Minnesota Supreme Court precedent. Just as the Court acknowledged that it "must predict what the Minnesota Supreme Court would do, even if that results in inconsistency with another court in the district," the same is true even if that results in inconsistency with the Eighth Circuit. *See, e.g., Atchison, Topeka and Santa Fe Ry. Co v. Pena*, 44 F.3d 437, 443 (7th Cir. 1994) (holding that it is "[o]ur duty to independently decide our own cases, which sometimes results in disagreements with decisions of the other circuits"); *Am. Dental Ass'n v. Hartford Steam Boiler Inspection & Ins. Co.*, 625 F. Supp. 364, 367 (N.D. Ill. Dec. 6, 1985) (advocating the disregard of appellate court decisions if state supreme court would decide otherwise); *Indep. Petrochemical Corp. v. Aetna Cas. & Sur. Co.*, 944 F.2d 940, 944 (D.C. Cir. 1991) (refusing to follow the Eighth Circuit's prior ruling because it failed to properly "apply . . . Missouri law principles").

Next, Target fails to deal with the public policy implications triggered by the Court's ruling head on. Hussmann's brief details the inequitable and illogical results that flow from this Court's ruling, including that Target—who is singularly charged with the responsibility of maintaining a safe premises and uniquely situated to accomplish that end—may not be responsible for its own clear acts of negligence. In response, Target asserts that Hussmann's "public policy argument essentially advocates the rejection of any agreement by one party to

indemnify another for its own negligence." (Doc. 287 at 10). This is not at all true. Hussmann acknowledges that parties can contract to shift liability. But, consistent with Minnesota law, the intention to do so must be specifically expressed in a clear and unambiguous manner. *See, e.g., Harleysville (dissent)*, 716 F.3d at 464 ("In effect, the Minnesota court has adopted a plain statement rule for indemnification clauses that purport to cover an indemnitee's own negligence. To be effective, the clause must refer to negligence and must state expressly that the contracting party will indemnify the other party for its own negligence.") The indemnity provision at issue does not expressly state in a clear and unequivocal manner that Hussmann will be responsible for Target's own negligence.

When Target previously used the same (or nearly identical) contract language at issue here, the trial courts found that the clause did "not clearly and unequivocally require [supplier] to defend and/or indemnify Target for Target's own negligence." *Brown*, 2013 WL 5737344 at *3; *see also, McDonald*, 2013 WL 869680 at *2. But, when Target did provide clear and unambiguous language in an agreement that it would be indemnified "without regard as to the negligence of any party or parties, whether such negligence be sole, joint or concurrent, active or passive," the trial court ruled in its favor on the indemnity claim. *Target Corporation v. Normark Corporation*, 2008 WL 305457 at *4-5 (D. N.J., 2008).[2] Accordingly, the three courts to have analyzed Target's contracts all ruled consistently with the standard set forth by the Minnesota Supreme Court. This Court, respectfully, did not. The present ruling incorrectly equates a broad, non-specific indemnity provision with the legal requirement that an intention to shift liability be

---

[2] It is not "ludicrous," as Target contends, to reference this case. (Doc. 287 at 11). The fundamental rule of contract interpretation is to ascertain and give meaning to the intent of the parties. *See, e.g., RAM Mut. Ins. Co. v. Rohde*, 820 N.W.2d 1, 14 (2012); *Thompson v. Gordon*, 241 Ill.2d 428, 441 (2011). *Normark* reveals that Target had language expressly shifting liability at its disposal but yet, in its contract with Hussmann, elected not to use it. The reasonable inference, therefore—all of which must be drawn in Hussmann's favor—is that Target did not intend to shift liability here.

7

specifically expressed in clear and unequivocal terms. The public policy implications of this Court's ruling—both in this case and others—are substantial.

Last to be addressed are Target's arguments that the defense issue has become moot and that the indemnity issue is yet to be determined. As discussed briefly above, the basis for Target's contention that the defense issue is moot is that Hussmann's insurer recently agreed to pay for Target's defense subject to a reservation of rights. What Target fails to appreciate is that Hussmann is not an insurance company and the Supplier Qualification Agreement is not an insurance policy. The Court's holding that Hussmann is obligated to pay for Target's defense is not discharged by the insurer's agreement to do so, especially given the reservation of rights and Target's prediction that there will be a declaratory judgment action.[3] (Doc. 287 at 3 n. 1). That being said, if Target is right Hussmann has no objection to the Court vacating the April 22, 2015 order on the basis of it being moot.

Moreover, Target's repeated assertion that the Court has not provided any directive as to the issue as to indemnity is fiction. (Doc. 287 at 2-3, 14). The Court has ostensibly held that the indemnification provision makes Hussmann responsible for Target's own acts of negligence if the water on the floor came from a Hussmann refrigeration unit. Based on the Court's "but for" analysis, this would be true even if it's established that Target knew of the potential for leaks, knew there was water on the floor, and took no action whatsoever to assure a safe shopping environment for its store patrons. Similarly, Hussmann could be responsible even if there was nothing wrong with the refrigeration unit whatsoever and the leaked water occurred because Target negligently allowed the case drain to become clogged with debris. Target, of course, has

---

[3] Target's claim that Hussmann's argument has been rejected by its own insurer makes no sense. The insurer based its coverage determination upon the language of the insurance policy and consistent with the black letter law that an insurer's duty to defend in the context of an insurance policy is broad. On the other hand, Hussmann's argument is based on the language of the Supplier Qualification Agreement and consistent with the law that contract provisions shifting liability are to be strictly construed. It is apples to oranges. For the same reason, Target's citation to and reliance on *West Am Ins. Co. v. Bedwell,* on page 12 of its response, is off point. 715 N.E.2d 759 (Ill. App. 1999) (analyzing whether an insurer owed a duty to defend under the terms of an insurance policy).

taken a position in line with the Court's analysis. As plainly revealed in footnote 1 of its response, Target claims it has no financial responsibility or risk for its own negligence and, whether in settlement or post-judgment, it will not be contributing to a fund.[4] (Doc. 287 at 3-4 n. 1). Target's suggestion that the indemnity issue has not been effectively ruled on—or, at a minimum, has not immediately and significantly impacted this case—is disingenuous.

### B. Alternatively, this Court should allow for immediate appeal of the summary judgment order.

In the event this Court denies Hussmann's Motion, the Court should allow for immediate appeal through certifying the summary judgment as final pursuant to Rule 54(b) or, alternatively, granting the request for permissive interlocutory appeal pursuant to 28 U.S.C. § 1292(b).

#### 1. The Court should certify its summary judgment ruling pursuant to Rule 54(b).

Target's objection to Rule 54(b) certification is confined to two paragraphs (Doc. 287 at 5, 13) and solely relies on a Tenth Circuit case[5] to incorrectly support the misconception that an order cannot be final if it fails to specify the amount of attorneys' fees and costs awarded. To be clear, the Court's ruling that Hussmann has a duty to defend and insure Target, including for Target's own negligence, should be final given that the Order not only resolves liability on a separate and distinct claim, but also effectively determines damages. Target, of course, counters that the order is incomplete because Target's attorneys' fees continue to accrue and thus, so do the damages. But the Seventh Circuit has already addressed that issue. *See Parks v. Pavkovic*, 753 F.2d 1397 (7th Cir. 1985).

---

[4] Ironically, at the same time Target states that it will not be contributing to a settlement fund, it claims that Hussmann is the one who will not participate in good faith. That is not true. Hussmann will participate based on its own risk and exposure. At the same time, Hussmann respectfully disagrees with the Court's ruling and has the prerogative of appealing this issue (whether now, if the Court allows, or post-judgment).

[5] *Wheeler Machinery Co. v. Mountain States Mineral*, 696 F.2d 787 (10th Cir. 1983) is distinguishable given that the Tenth Circuit expressly reserved ruling on all claims for interest and attorney fees. This Court did not make any such reservations.

In *Parks*, the court initially noted that "[n]ormally an order that merely decides liability and leaves the determination of damages to future proceedings does not finally dispose of any claim; it is just a preliminary ruling on the plaintiff's damage claim." *Id.* at 1401. However, the analysis does not end there. Indeed, in the very next sentence the Seventh Circuit implemented a vital qualifier that "if the determination of damages will be mechanical and uncontroversial, so that the issues the defendant wants to appeal before that determination is made are very unlikely to be mooted or altered by it—in legal jargon, if only a 'ministerial' task remains for the district court to perform—then immediate appeal is allowed." *Id.* In *McMunn v. Hertz Equip. Rental Corp.*, 791 F.2d 88, 91 (7th Cir. 1986), the Seventh Circuit reiterated this principle:

> The appeal [pursuant to Rule 54(b)] in the present case, however, is saved by the fact that the judgment granting the third-party claim is only partially contingent on the success of the main claim and will therefore not be moot even if the main claim is dismissed. For the indemnity clause not only requires [third-party defendant] to make good any damages that [plaintiff] may collect from [defendant/third-party plaintiff]; *it requires [third-party defendant] to pay [defendant/third-party plaintiff] the expenses of defending against [plaintiff's] suit. Those expenses will be incurred—some of them have been incurred already—whether or not [plaintiff] wins his suit.*
>
> * * *
>
> *The full monetary value of the obligation is unknown and may in the end be small, although it will be computable mechanically and is therefore not indefinite* in the sense in which an order that determines liability but not damages normally is indefinite and therefore not immediately appealable.

(emphasis added). Here, the Court has already ruled that Hussmann has a duty to defend Target and hence, Hussmann would have to fund Target's defense. Thus, all that remains is the ministerial and mechanical task of calculating damages. *See Parks* at 1402 (finding that "although computing the money owed . . . is not automatic, it is mechanical" and the order directing reimbursement of "an as yet undetermined amount" is properly before the appellate court as the plaintiffs merely need to submit receipts or evidence of payment). The inability to

cement the final total owed at this stage in this litigation is not a justification for stalling Rule 54(b) certification

### 2. Alternatively, the Court should grant Hussmann's 28 U.S.C. § 1292(b) petition.

This Court should grant this §1292(b) petition because the order (1) involves a question of law that is (2) controlling, (3) where there is substantial grounds for difference of opinion and (4) the resolution of which may materially advance the ultimate termination of the litigation.

#### a. *Resolution of this issue involves a question of law.*

Target does not dispute that the resolution of this issue involves a question of law.

#### b. *The question of law is controlling.*

Target does not dispute that the question of law is controlling.

#### c. *There is substantial ground for difference of opinion as to the controlling question of law.*

With disagreement between the Minnesota Supreme Court and the Eighth Circuit (*Yang* and *National Hydro* vs. *Harleysville*), within the Eighth Circuit itself (majority vs. dissent) and in the Northern District of Illinois (*Brown* vs. *Kruis*), Target illogically contends "there is no substantial ground for difference of opinion." (Doc. 287 at 13). Target further contends there is "no reason to believe that the Seventh Circuit would ignore the 'home circuit' rule and create a conflict between the Seventh and Eighth Circuits." (Doc. 287 at 5). However, as detailed above, it is the duty of this Court and the Seventh Circuit, in applying Minnesota law, to apply the rulings from the Minnesota Supreme Court irrespective of any conflict.

Target also hastily attempts to imply that the *Harleysville* ruling controls because the Minnesota Supreme Court has not called the decision "into question" in the two years since its publication. (Doc. 287 at 14). In the same vein, Target further points out that *Harleysville* "has been cited approvingly five times since its publication and has not been criticized or overturned"

11

(Doc. 287 at 6 n.2), while neglecting to mention that the case has never been cited by the Minnesota Supreme Court or any published Minnesota state court opinion.[6] Obviously, the Minnesota Supreme Court cannot unilaterally address *Harleysville*, but rather must wait until a matter is ripe for review. Target's point is irrelevant.

> *d. Resolution of this issue may materially advance the ultimate termination of this litigation.*

As already thoroughly detailed in prior briefing and above, the resolution of this hotly-disputed issue may materially advance the ultimate termination of this litigation. Without a final resolution, the likelihood of settlement is remote, especially given Target's proclamation that it will not financially contribute.

### III.　Conclusion

The Court should reconsider and reverse its ruling granting Target's motion for partial summary judgment. Alternatively, the Court should enter an order pursuant to Federal Rule of Civil Procedure 54(b) finding that there is no just reason for delay and expressly directing entry of final judgment as to the April 22, 2015 Order relating to Hussmann's duty to defend and Hussmann's breach of its duty to procure insurance covering Target. If, however, the Court declines to enter an order pursuant to Federal Rule of Civil Procedure 54(b), then Hussmann requests that its petition to appeal the April 22, 2015 Order pursuant to 28 U.S.C.A. § 1292(b) be granted.

---

[6] By using Target's same ill-conceived calculus, *National Hydro* and *Yang* have been collectively cited 89 times and have never been overturned.

Respectfully submitted,

**SEGAL MCCAMBRIDGE SINGER & MAHONEY, LTD.**


By: s/ Brian H. Eldridge

Steven A. Hart (shart@smsm.com)
Brian H. Eldridge (beldridge@smsm.com)
Jack B. Prior (jprior@smsm.com)
Jack Casciato (jcasciato@smsm.com)
233 South Wacker Drive, Suite 5500
Chicago, IL 60606
(312) 645-7800
*Attorneys for Hussmann Corporation*